**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

LUIS SIRA,

        Petitioner,

v.

JOHN MATTOS, *et al.*,

        Respondents.

Case No. 2:26-cv-00828-RFB-DJA

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Luis Sira's First Amended Petition for Writ of Habeas Corpus, which he filed pursuant to 28 U.S.C. § 2241. See generally ECF No. 10 [hereinafter, "Petition"]. Through it, he challenges the lawfulness of his ongoing detention at the Nevada Southern Detention Center ("NSDC") in the custody of Immigration and Customs Enforcement ("ICE"). Specifically, Respondents are detaining Petitioner without providing an opportunity for release on bond, as they assert that he is subject to 8 U.S.C. § 1225(b)(2)(A). See ECF No. 16 at 1–2 [hereinafter, "Opposition"]. Petitioner argues that his detention violates: (i.) the Immigration and Nationality Act ("INA") and (ii.) the Fifth Amendment's Due Process Clause. See Petition at 7–16. Moreover, Petitioner argues his detention was void *ab initio* based on Respondents' failure to employ proper procedures. See ECF No. 18 at 4–5 [hereinafter, "Traverse"].

Respondents invoke their novel statutory interpretation of § 1225(b)(2)(A) to justify Petitioner's detention. See generally Opposition. This Court is well acquainted with Respondents' interpretation of the INA, as the Court has repeatedly rejected it as unlawful. See, e.g., Jacobo Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799, at \*34–35 (D. Nev. Mar. 30, 2026) (collecting cases). In fact, the Court recently granted relief on this precise issue in a related class-action, which is inextricably intertwined with this case. Specifically, the Court: (i.)

declared that Respondents' interpretation is wrong; (ii.) declared that members of the Jacobo Ramirez Class are entitled to a bond hearing under 8 U.S.C. § 1226(a); and (iii.) vacated Respondents' related policies—namely, the Board of Immigration Appeals's decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) [hereinafter, "Hurtado"]. See Jacobo Ramirez, 2026 WL 879799, at *33–34. As discussed below, the Court finds that Petitioner is a member of the Jacobo Ramirez Class. Therefore, his ongoing detention under § 1225(b)(2)(A), and pursuant to a bond denial based solely on Hurtado, is statutorily unlawful and has constitutional consequences. Thus, the Court grants Petitioner a writ of habeas corpus, and based upon the evidence presented to this Court, orders Respondents immediately release him from custody as his detention was void *ab initio*.

### I.    CLASS MEMBERSHIP

From the outset, the Court finds that Petitioner is a member of the Jacobo Ramirez Class. This certified class includes the following people:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Id. at *4 (citation omitted). Based on the Parties' undisputed factual allegations, and the evidence they supply, the Court finds that Petitioner satisfies these criteria. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings). First, Petitioner is an undocumented noncitizen who is actively being detained by ICE. See Petition at 1–2. Second, he is in removal proceedings before the Las Vegas Immigration Court, which sits in the United States District of Nevada. See ECF No. 10-1 (March 25, 2026 Order of the Immigration Judge). Third, DHS alleges that Petitioner entered the United States without inspection, admission, or parole. See generally Opposition; see also ECF No. 10-3 (Notice to Appear). Fourth, Respondents are detaining him pursuant to § 1225(b)(2)(A); in other words, the government is not

asserting that Petitioner is subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See Opposition at 1–2. Fifth, Petitioner was arrested well within our country's interior, long after he entered the United States. See Petitioner at 4–5. In sum, Petitioner clearly falls within the Jacobo Ramirez Class, and he is entitled to the relief afforded to the Class by this Court. Cf. Navarro v. Mukasey, 518 F.3d 729, 737 (9th Cir. 2008) ("They are, accordingly, class members eligible for relief.").

Therefore, Petitioner's ongoing detention is unlawful, as the government is improperly subjecting him to mandatory detention under § 1225(b)(2)(A) when he can only be properly detained under § 1226(a). See Jacobo Ramirez, 2026 WL 879799, at *33–34. In addition, the basis for the Immigration Judge's denial of bond, i.e., Hurtado, has been vacated by this Court's order as to Petitioner. See id.

## II.   DUE PROCESS

The Court also finds that Petitioner's detention violates the Due Process Clause of the Fifth Amendment. The Court has previously clarified that similarly situated noncitizens are entitled to due process under the Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d. 1123, 1158–60 (D. Nev. 2025); Jacobo Ramirez v. Noem, --- F. Supp. 3d. ---, 2025 WL 3270137, at *8–9 (D. Nev. Nov. 24, 2025). The Court incorporates these holdings, and their underlying reasoning, by reference, and it applies them to the facts of this case. The Court now turns to Petitioner's due process claims.

### A. *Procedural Due Process*

To determine whether detention violates procedural due process, courts apply the three-part balancing test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203–1207 (9th Cir. 2022) (collecting cases and clarifying that the Mathews test is appropriate in the context of immigration detention). Specifically, courts weigh the following three factors: (1.) "the private interest that will be affected by the official action"; (2.) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3.) "the

Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." Mathews, 424 U.S. at 335 (citation omitted).

On balance, these factors weigh heavily in favor of Petitioner because: (1.) Respondents are depriving Petitioner of his fundamental liberty interest in being free from incarceration; (2.) the risk of an erroneous deprivation of liberty is extraordinarily high where immigration officials have the sole, unguided, and unreviewable discretion to detain Petitioner; and (3.) Respondents' interest in enforcing immigration law is served by adherence to the INA's procedures and its implementing regulations. Cf. Escobar Salgado, 809 F. Supp. 3d. at 1160–62 (elaborating on this same analysis and reaching these same conclusions).

**B.  *Substantive Due Process***

Outside of the criminal context, government detention violates the substantive component of the due process clause "unless the detention is ordered . . . in certain special and narrow nonpunitive circumstances, . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (citations and quotation marks omitted). Despite detaining Petitioner for six months, Respondents have not asserted an individualized justification—let alone a special or compelling justification—for depriving Petitioner of his freedom; the immigration judge's bond denial did not make a finding of dangerousness nor flight risk. See ECF No. 10-1. Accordingly, the Court further finds that Petitioner's prolonged detention, which is poised to last for an untold period of time and, as set forth *infra* Part III, was void *ab initio*, also violates his right to substantive due process. Cf. Escobar Salgado, 809 F. Supp. 3d. at 1162 (elaborating on this same analysis and reaching the same conclusion).

For the foregoing reasons, the Court has little difficulty concluding that Petitioner's detention violates his right to procedural and substantive due process and is, therefore, unconstitutional.

///

///

### III.    REMEDY

Based on the record before it, the Court finds that Petitioner is subject to an intolerable risk of arbitrary, erroneous, and prolonged detention. Outside of the unlawful arrest and detention issues discussed below, Petitioner was unlawfully transferred out of Nevada, in violation of Court order, see ECF No. 8, for nearly one month's time, and he has spent six months in civil detention without any form of an individualized custody determination. See Petition at 15–16 (highlighting Ninth Circuit case law that expresses "grave doubts" about the constitutionality of prolonged detention like that experienced by Petitioner); see also Rodriguez v. Marin, 909 F.3d 252, 256–57 (9th Cir. 2018). Moreover, Respondents fail to reckon with any of their errors concerning Petitioner's treatment heretofore and have failed to proffer any alternative procedure(s) that would comply with due process; instead, they merely re-propose the same procedures—or lack thereof— that this Court has already found to be unconstitutional. See generally Opposition.

Given the history of regulatory, statutory, and constitutional violations in this case, the Court finds that the typical procedures governing bond hearings are insufficient to safeguard our country's guarantee of due process, warranting relief in the form of immediate release as Petitioner's detention was void *ab initio*.

Despite being ordered to do so by this Court, Respondents failed to produce alongside their Return "(1) I-200 Warrant for Arrest of Alien" and "(2) Form I-286 Initial Custody Determination," or in the alternative, "CERTIFY that any of the listed documents are not in their possession, custody, or control." See ECF No. 14 at 2–3 (Order to Show Cause). The Court finds Respondents' failure to produce these documents without so much as an acknowledgement or explanation, in the face of Court order, is a concession that no such records exist as to this Petitioner. On that basis, the Court finds Petitioner's detention was void *ab initio*, as there was no showing of a lawful basis for Petitioner's arrest, and Respondents "detained [Petitioner] under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a)." Rodriguez-Acurio v. Almodovar, No. 2:25-cv-06065 (NJC), 2025 WL 3314420, at *31 (E.D.N.Y. Nov. 28, 2025) (ordering a noncitizen's release on this basis because "a bond determination by a DHS officer or an immigration judge would not remedy the core

constitutional violation at issue here" where the noncitizen's detention was unlawful from its inception); 8 C.F.R. §§ 236.1(b)(1), (d)(1) (setting forth the requirements for arrest authority and initial custody determinations for noncitizens detained under § 1226(a)); see also Djiwaje v. Bondi, No. 2:26-cv-00344-RFB-MDC, 2026 WL 926753 (D. Nev. Apr. 6, 2026) (explaining the regulatory and statutory background of the warrant requirement for detaining noncitizens under § 1226(a) and holding that immigration authorities' failure to effectuate a noncitizen's arrest under the authority of a properly issued Form I-200 necessitated that noncitizen's immediate release from detention).

Therefore, the Court finds that it must adopt equitable remedies to ensure that Respondents abide by due process moving forward. Cf. Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."); U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the appropriate remedy is immediate release from unlawful detention.

Moreover, should Respondents ever re-detain Petitioner under 8 U.S.C. § 1226(a), and in accordance with its requirements, the Court orders Respondents to conduct a bond hearing for Petitioner under § 1226(a), and its implementing regulations, wherein the government must prove, *by clear and convincing evidence*, that Petitioner's civil detention is justified by an individualized, constitutionally recognized interest—*e.g.*, that his detention is necessary to prevent danger to the community or to ensure his future appearance at removal proceedings. Cf. Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011) (holding that, "[g]iven the substantial liberty interest at stake[,] . . . the government must prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond," where a petitioner was in prolonged immigration detention while the Ninth Circuit reviewed his removal order), abrogation on statutory grounds recognized by Rodriguez Diaz v. Garland, 53 F.4th 1189 (9th Cir. 2022); Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) ("[T]he BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [a detained noncitizen] is a danger to the community" in the context of prolonged detention under 8 U.S.C. § 1226(c)). This remedy

will directly address "the risk of error inherent in the truthfinding process," <u>Mathews</u>, 424 U.S. at 344, which has only been exacerbated by Respondents' disregard for longstanding due process principles. While the Court does not take these steps lightly, it finds it is necessary because of the violations perpetrated by Respondents heretofore.

Consistent with its broad equitable authority to fashion a remedy for unlawful detention "as law and justice require," and considering the injuries Petitioner has suffered and continues to suffer due to Respondents' ongoing enforcement of unlawful detention policies, the Court orders Respondents to **immediately release** Petitioner from custody on his own recognizance, with no substantial constraints on his liberty, no later than **12:00 p.m. on May 16, 2026**. <u>See</u> <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. . . . The court is free . . . to fashion the remedy as law and justice require . . . .") (citations and quotation marks omitted).

Based on the foregoing, **IT IS HEREBY ORDERED** the Petition for Writ of Habeas Corpus (ECF No. 10) is **GRANTED**.

**IT IS FURTHER ORDERED** the Motion for Temporary Restraining Order (ECF No. 11) is **DISMISSED as moot**.

**IT IS FURTHER ORDERED** Respondents **IMMEDIATELY RELEASE** Petitioner from detention on his own recognizance, **BUT BY NO LATER** than **12:00 p.m. on May 16, 2026**. This means Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner during the pendency of his current removal proceedings unless and until it is determined that his detention is warranted under § 1226(a) after a constitutionally adequate bond hearing, as outlined above, *supra* Part III.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED**

from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from invoking 8 C.F.R. § 1003.19(i)(2) to continue Petitioner's detention, as the Court has already found that the regulatory automatic stay is facially unconstitutional and adopts that finding here. See generally Herrera v. Knight, 798 F. Supp. 3d 1184 (D. Nev. 2025).

**IT IS FURTHER ORDERED** that the Parties shall file a joint status report by **May 18, 2026**. The status report shall (i.) confirm the date and time of Petitioner's release from detention in compliance with this Order and (ii.) confirm Respondents' compliance with this Court's directives concerning conditions of release.

**IT IS FURTHER ORDERED** Respondents must inform Petitioner's counsel of the date, time, and location of Petitioner's release at least two hours in advance of said release. Respondents must  also return Petitioner's personal  property,  including  any  personal  identification document and any employment authorization document, upon release.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case. The Court also retains jurisdiction to consider Petitioner's request for fees and costs pursuant to 28 U.S.C. § 2412. Petitioner may file an application for fees and costs consistent with the deadlines and requirements set forth in 28 U.S.C. § 2412 and this Court's Local Rules of Practice 54-1 and 54-14.

**DATED:** May 15, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**